KARL H. DOERING, Plaintiff-Appellee, *v.* KEVIN R. JANSSEN, Defendant-Appellant.

Third District No. 78-430

Opinion filed August 27, 1979.

James E. Bowles and Robert E. Nesemann, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Fred B. Moore, of Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This action was brought by the plaintiff, Karl H. Doering, to recover damages for personal injuries incurred in a collision involving defendant Kevin R. Janssen's automobile while plaintiff was a passenger therein. A jury in the Tazewell County Circuit Court returned a verdict for the plaintiff upon which judgment was entered and from which this appeal is taken.

Shortly after 3 o'clock on the afternoon of September 13, 1975, at the intersection of Tennessee Avenue and State Route 150 in Morton, Illinois, a vehicle driven by Donald Seaman collided with another vehicle driven by the defendant. The plaintiff and another man, Terry Hasty, were passengers in defendant's vehicle. Although defendant's negligence is not an issue on this appeal, it appears from the record that defendant's vehicle failed to yield to traffic on State Route 150 as required by a stop-sign posted and visible to vehicles travelling south on Tennessee Avenue.

What is at issue on this appeal is the extent of plaintiff's injuries and whether the Tazewell County jury correctly assessed damages for such

injuries. From the time of the accident until the time of trial in the spring of 1978, plaintiff suffered from intermittent numbness and weakness on the left side of his body. An electroencephalogram (EEG), a test which records brain-wave activity over the cortex of the brain, was administered to the plaintiff in November of 1975 and again in May of 1978. Both tests showed a slowing of brain-wave activity over that portion of the brain which controls the left side of the body.

The jury's itemized verdict included sums for (1) the nature, extent and duration of the injuries; (2) disability and disfigurement; (3) pain and suffering; (4) medical expenses; and (5) future loss of earnings. Defendant cites several alleged errors which he contends undermined the authority of that verdict.

First, defendant alleges that the award for future lost wages is contrary to the manifest weight of the evidence in that the future consequences of plaintiff's injury were not shown to be reasonably certain to result. To understand this alleged error it is necessary to differentiate between (1) the brain injury, and (2) the physical manifestation of the brain injury. Plaintiff's medical expert, Dr. Garwacki, testified that in his opinion, based upon a reasonable degree of medical certainty, the brain injury as monitored by the EEG was permanent. The same physician testified, however, that the physical manifestations of the brain injury, specifically numbness and weakness on the left side, had a 60/40 chance of being controlled. That is, the medical expert was not certain that the physical manifestation of the brain injury would be permanent. Stated another way, the physician could not at the time of trial testify whether Karl Doering was among the 60% whose condition would eventually be controlled by medication or among the 40% who would continue to have numbness and weakness.

The medical testimony of Dr. Garwacki represented the evidentiary basis for the testimony of Mr. Ogden concerning the future employability of the plaintiff. Mr. Ogden, the owner and operator of a personnel consulting firm in the central Illinois area, was specifically permitted to testify as to the effects of plaintiff's medical condition on his employability with eight major employers in the central Illinois area. We are satisfied that the jury's award of future loss of earnings is not without foundation in the record.

Defendant in his brief before this court cites the case of *Lauth v. Chicago Union Traction Co.* (1910), 244 Ill. 244, for the proposition that damages attributable to future loss of earnings cannot be based upon "mere conjecture [or] mere probabilities." To the extent that *Lauth* would deny recovery to this plaintiff under these facts it cannot now be nor was it ever the law.

■■ It is true that an award of future loss of earnings cannot be sustained wherein the foundation is speculative or conjectural testimony. However, where such awards find their basis in testimony delivered with reasonable certainty, they must be upheld. In the case at bar, in uncontradicted testimony, plaintiff's medical expert testified that there was a 40% possibility that the injury would permanently manifest itself with numbness and weakness on the left side. Were we to accept defendant's reading of the *Lauth* case, that unlucky 40% of persons incurring this injury who suffer its permanent debilitating effects would have no remedy for their considerable loss. *Lex semper dabit remedium*, the law will always give a remedy, is a time-honored principle of our common law heritage. And still today in Illinois, the law does not abandon without a remedy the many so grievously harmed. Ill. Const. 1970, art. 1, §12.

■■ In the instant case Dr. Garwacki did testify with reasonable certainty that 40% of those persons receiving an injury such as the one plaintiff received would continue to have numbness and weakness for the remainder of their lives. This exemplifies the certainty which testimony must possess if it is to be the foundation for an award of future loss of earnings. There is no speculation. There is no conjecture. That Dr. Garwacki's testimony is stated in terms of mathematical probability does not belie the certainty with which it was offered. The jury could properly conclude that there was a sufficient likelihood that the plaintiff would be plagued for the remainder of his life with uncontrollable seizures on his left side. It follows that if the jury so concluded, then coupled with Mr. Ogden's testimony concerning the effects of such a medical condition on employment, the jury's award for future loss of earnings should be upheld.

■■ The question raised on this appeal is similar to one addressed by this court in *Swearinger v. Klinger* (1968), 91 Ill. App. 2d 251, 234 N.E.2d 60. In that case as here, the plaintiff suffered a brain injury resulting from an automobile collision. There was evidence that the resulting condition, epileptic type activity, was controllable by medication and recovery might be expected within four to six years; but there was also evidence that such a condition might be permanent. There, as here, the court afforded plaintiff a remedy and sustained the award for damages. In the instant case the evidence was sufficient for the jury's award of future loss of earnings to be affirmed.

■■ Defendant's next allegation of error is that the trial court admitted evidence that plaintiff intended to enter a new line of work. He argues that such evidence cannot be considered to determine the measure of damages for loss of future wages. Whether or not defendant's statement of the law is correct, it is inapplicable to the facts of the case before us.

Where the plaintiff was an unemployed high school student at the time of his injury, he is permitted to show the effect of his injury on his ability to labor. (*Illinois Central R.R. Co. v. Staples* (8th Cir. 1959), 272 F.2d 829, applying the substantive law of Illinois.) Any other rule would lead to absurd results. It is not necessary to establish an earnings history at the time of injury in order to be compensated for future loss of earnings. (*Illinois Central R.R. Co. v. Staples.*) And, a student with no earnings history should not be precluded from proving the future earnings impact of his impairment in terms of his career ambitions. The cases cited by the defendant are clearly not the rule in Illinois.

There is evidence in the record that plaintiff's impairment, permanent brain injury, limits employment opportunities such that future earnings could be reduced by as much as $12,000 annually. We cannot say that the award for loss of future earnings is contrary to the manifest weight of the evidence. We will not, as defendant requests, reweigh the evidence so as to conclude that the consequences of plaintiff's injuries were minimal where there is substantial evidence in the record to support the jury's verdict. *Wisniewski v. City of Chicago* (1974), 20 Ill. App. 3d 650, 315 N.E.2d 43.

■■ Defendant objects also to the introduction of a life-expectancy table with which the jury was instructed to consider the duration of impairment in plaintiff's loss of earnings. We believe the record is sufficient to sustain the trial court's decision. The basis for defendant's objection again revolves around the alleged lack of any evidence concerning the permanency of plaintiff's injury. As we have determined in the preceding paragraphs that there is evidence of a permanent impairment in plaintiff's ability to labor and further evidence that such impairment adversely affects future earnings, it follows that the life expectancy table was properly before the jury during its deliberations.

■■ As an additional ground for error defendant argues that the circuit court improperly permitted Mr. Ogden to testify with respect to the effect of plaintiff's medical condition on his employability. We note initially that of the 12 objections raised by the defendant during the plaintiff's examination of Mr. Ogden, nine were sustained by the trial court. Only on three occasions was the plaintiff permitted to continue in spite of objections that were raised. Defendant argues in his brief that "all facets of the foundation of Mr. Ogden's testimony depend upon conjectural happenings which were not in evidence at the trial of this cause." The contrary is true. On each occasion when defendant's objections were overruled, Mr. Ogden's testimony dealt with a specific career position with an identified employer. With respect to each of these three career positions Mr. Ogden testified that based upon his expert opinion and express inquiries with the three employers, the plaintiff could

be employed but for his injury. Furthermore, Mr. Ogden's understanding of plaintiff's injury was consistent with the expert medical evidence which was heard by the jury. No error occurred when the trial court overruled the objections to Mr. Ogden's testimony.

■■ Finally, the defendant contends on appeal that the verdict form submitted to the jury which required that damages be itemized into numerous elements was prejudicial to the defendant. The form of verdict returned by the jury was itemized as follows:

"* * * We assess the plaintiff's damages in the total sum of $45,733.57 itemized as follows:

| | |
|---|---|
| (a) nature, extent and duration of the injury | $750 |
| (b) disability and disfigurement | $1000 |
| (c) past pain and suffering | $1000 |
| (d) future pain and suffering | $500 |
| (e) past medical expenses | $1733.57 |
| (f) future medical expense | $750 |
| (g) future loss of earnings | $40,000." |

We do not agree that such itemization constituted error. We observe at the outset that the General Assembly recently amended the Civil Practice Act by adding section 65.1, which requires verdicts to be itemized at least in terms of economic and noneconomic loss. (Ill. Rev. Stat. 1977, ch. 110, par. 65.1.) This recent addition to the laws of this State was enacted by the 79th General Assembly in the form of House Bill 3957. Specifically, it was offered as an amendment to House Bill 3957 by Senator Bradley M. Glass. In discussing his amendment on the floor of the Illinois Senate, Senator Glass remarked "that large awards for pain and suffering might very well be reduced if a jury were required to account for and label each dollar that is awarded." At another point in the debate, Senator Glass said that, "if a jury were required to itemize what it is * * * they are awarding, so that they * * * say * * * this is what we're awarding and itemize it, * * * they would, in fact, think more carefully about giving large amounts of pain and suffering." We believe that based upon the comments by the legislative sponsor of section 65.1, it is fair to say that the legislative intent to the section was to require jurors to carefully consider the purpose for which each dollar in damages was awarded. While the verdict form in the instant case goes beyond the express requirements of section 65.1, it is thoroughly consistent with the legislative purpose, and does not appear to contravene any pre-existing policy of this State. To agree with the defendant would be to frustrate the general policy direction which the legislature has charted while adhering mechanistically to the minimal requirements of section 65.1. We choose not to adopt that

view. It was not error to submit a verdict form which itemized numerous elements of damages.

For the reasons above stated and after careful consideration of the written and oral arguments of counsel, we affirm the decision reached by the Circuit Court of Tazewell county.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.