MALIA DAWN STROMQUIST, Plaintiff-Appellee, *v.* BURLINGTON NORTHERN, INC., Defendant-Appellant.

Third District    No. 82—47

Opinion filed January 6, 1983.

38

Kenneth J. Wysoglad, Thomas J. Knapp, and Michael L. Sazdanoff, all of Chicago, for appellant.

Jerome Mirza, of Jerome Mirza and Associates, Ltd., of Bloomington, and Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

A car-train collision at a railroad crossing in Orion, Illinois, on January 29, 1977, gave rise to the instant lawsuit. The plaintiff, Malia Stromquist, the driver and sole occupant of the car, brought suit against the defendant railroad seeking recovery for injuries she incurred in the collision. Her complaint alleged two legal theories for recovery, one ordinary negligence and the other wilful and wanton conduct. A Henry County jury returned a verdict for the plaintiff under both theories, awarding $425,000 for compensatory damages and $100,000 for punitive damages. The railroad appeals from the verdict of the Henry County Circuit Court alleging numerous errors.

It appears from the record that the crossing in question, the 12th Avenue crossing, had been a source of concern in the Orion community for some time prior to January 29, 1977. During the 10-year period immediately preceding the collision in question, five other mishaps had occurred at the same crossing. The crossing was equipped with cross buck signs as warning devices, and train speeds in Orion were limited to 30 miles per hour and the speed limit on 12th Avenue as 25 miles per hour. Nonetheless, the peculiar nature of visual obstructions at the 12th Avenue crossing, as noted on a visibility survey conducted in September of 1976, resulted in the sight distance existing in each quadrant of the crossing being less than the desired distance under the defendant's guideline. For this reason and others, village officials in Orion approached the railroad in the early 1970's seeking to have improved warning devices installed at the crossing. Specifically, the village sought to have the 12th Avenue crossing "signalized," with flashing lights and bell. According to the testimony of the village clerk, this request was agreed to by the railroad conditioned on the

village's agreement not to oppose the removal of the 13th Avenue grade separation and the closing of the 10th Avenue crossing.

Again in 1975, in response to a fatal mishap at the subject crossing, village officials met with representatives of the railroad and the Illinois Commerce Commission. Again, the subject of the meetings was the signalization of the 12th Avenue crossing. And again, according to the village clerk, the railroad's position was that if the village pressed to have the 12th Avenue crossing signalized, then the railroad would seek to close the 10th Avenue crossing.

The same fatal collision generated other appeals to the railroad to take steps to improve the 12th Avenue crossing. A coroner's jury inquiring into the death recommended signalization of the railroad crossing. The president of the P.T.A. in the Orion school district wrote the railroad requesting flasher signals at 12th Avenue. After a period of no response, the P.T.A. orchestrated a letter writing effort to State legislator Clarence Neff, who contacted both the railroad and the Illinois Commerce Commission.

Finally, in August 1976, the village of Orion petitioned the Illinois Commerce Commission to signalize 12th Avenue. After the village's petition was filed, the railroad filed its counterpetition suggesting that 12th Avenue should be signalized and 10th Avenue should be closed. Hearings on the petitions began in November 1976 and were concluded on January 25, 1977, just four days before the collision involving the plaintiff.

January 29, 1977, was a cold day in Orion, Illinois, with temperatures hovering around zero. A few days before snow had fallen on the village and the oil and chip surface of 12th Avenue was still snow packed. At approximately 4:40 p.m., the plaintiff was westbound on 12th Avenue, en route to a roller skating rink to pick up her sister and a cousin. While dusk was overtaking daylight, it was not snowing and visibility was good.

As the southbound train approached Orion with three engines followed by 66 freight cars and a caboose, the engineer began to sound the engine's whistle and activated the automatic engine bell which rang continuously. As the train moved through Orion, the head brakeman was keeping a lookout for vehicles that would be approaching the track from the east, which was to his left as he faced the front of the engine, and the engineer was keeping a lookout toward the west, which was to his right as he faced the front of the engine. The brakeman first saw the plaintiff's car when it was 100 feet east of the crossing and the engine was 190 feet from the same point. The brakeman estimated the car's speed at 15 miles per hour, a speed it main-

tained without reduction as it approached the crossing. Realizing that the car was not stopping, the brakemen shouted to the engineer, who applied the train's emergency brakes. It was too late to avoid the impact.

The engine pushed the 1976 Dodge Colt to the south for a short distance, and then the auto came off the track, slid to the west and rolled into a ditch on the west side of the track. The plaintiff was thrown from the auto, receiving a severe blow to the head. When the engine came to a stop approximately 500 feet south of 12th Avenue, the head brakeman immediately headed back to the scene of the collision. As he approached plaintiff's car, he heard loud music coming from the speakers from the radio and tape player.

The plaintiff was unconscious at the scene, and after being taken to the hospital by ambulance, she remained there continuously for just over eight months. For the first two months, she was incapable of any voluntary movement except to follow individuals with her eyes. Fortunately, however, after extensive therapy and rehospitalization for orthopedic surgery, the plaintiff was able to leave the hospital ambulatory and independent in her activities of daily living, though not without some degree of permanent impairment.

Presented this account of the collision and the events which preceded it, the Henry County Circuit Court jury returned a verdict for the plaintiff itemized as follows:

| | |
|---|---|
| Nature extent and duration of the injuries | $238,000 |
| Disability | 38,000 |
| Past pain and suffering | 30,000 |
| Future pain and suffering | 8,000 |
| Medical expenses | 54,000 |
| Loss of earnings | 7,000 |
| Future loss of earnings | 50,000 |

The jury also returned a general verdict for $100,000 in punitive damages against the defendant.

While the defendant raises numerous alleged errors with this appeal, several concern the award of punitive damages, whether that award was supported by the evidence, and whether certain evidence was properly admitted in support of that award. We note that our laws provide that irrespective of the orders or proceedings of the Illinois Commerce Commission, a railroad has a common law duty to provide adequate warning devices at its railroad crossings. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 257 N.E.2d 216, *aff'd* (1971), 49 Ill. 2d 118, 273 N.E.2d 809; *Applegate v. Chicago & North Western Ry. Co.* (1948), 334 Ill.

App. 141, 78 N.E.2d 793.) Further, where that duty is breached wilfully and in conscious disregard of the public safety, an award of punitive damages will lie. (*Reiss v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1979), 77 Ill. App. 3d 124, 395 N.E.2d 981.) Finally, where conscious and wilful conduct is asserted, despite earlier authority to the contrary, recent decisions allow into evidence various incidents which show notice to the railroad that crossing protection was inadequate. (*First National Bank v. Illinois Central Gulf R.R. Co.* (1978), 62 Ill. App. 3d 36, 378 N.E.2d 1329.) With these points of law in mind, we consider the defendant's allegations of error.

■■ Admitted into evidence was the testimony of the village clerk, the P.T.A president, State legislator Neff, and the county coroner. The railroad urges that the testimony of each of these witnesses amounted to hearsay, nonexpert opinion as to the adequacy of the warning devices at the 12th Avenue crossing. We believe the defendant incorrectly states the limited purpose for which this testimony was admitted. We understand that evidence of prior complaints and prior accidents is probative of the railroad's actual knowledge, and such evidence would be relevant in the jury's consideration of the wilful and conscious nature of the defendant's conduct. (*Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 385 N.E.2d 780; *First National Bank v. Illinois Central Gulf R.R. Co.*) For this purpose and under these circumstances, we believe the circuit court correctly applied the recent case law in admitting testimony. We likewise find no error in admitting the coroner's testimony about his jury's recommendation; the proviso which limits admission of the coroner's verdict into civil proceedings (Ill. Rev. Stat. 1981, ch. 31, par. 19) applies only to "said civil suit or proceeding" arising by reason of the death examined in the coroner's verdict.

■ Having determined that the testimony objected to was properly admitted, we now conclude that the jury's award of punitive damages was adequately supported by the evidence. The record reveals that the railroad made a conscious, studied decision over a period of years not to upgrade the safety devices at the 12th Avenue crossing. This decision was reached in spite of repeated notice, in one form or another, that reason existed to doubt the sufficiency of the cross-buck warning devices. Indeed, there was evidence from which the jury could have concluded that the railroad callously chose to jeopardize the public safety at the 12th Avenue crossing unless and until it was permitted to close 10th Avenue. To deliberately hold the public safety hostage and to demand a ransom before performing a duty imposed by law are acts which illustrate the particularly reprehensible

want of care which will sustain an award of punitive damages.

■■ The railroad urges that the itemized verdict of the jury does not appear to be discounted for the comparative negligence of the plaintiff. The itemized verdict listed seven items of damage. Two of those items, medical expenses and loss of future earnings, were awarded in the maximum amount requested by the plaintiff. The other items were all discounted from the amount sought by the plaintiff. Assuming but not deciding that the plaintiff was guilty of contributory negligence as a matter of law, it is nevertheless apparent that the jury found plaintiff negligent and so reduced their verdict. Since the jury was instructed only to discount the total verdict by the percentage of the plaintiff's negligence, and since discounting the total verdict amount appears to have occurred, it cannot be said that the jury failed to properly follow their instructions. The bench and bar should note, however, that jury instructions which require a pro-rata discount of each item of damages would better serve the legislative purposes of section 65.1 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 65.1). See also *Doering v. Janssen* (1979), 76 Ill. App. 3d 62, 394 N.E.2d 721.

■■ Prior to trial, the plaintiff hired two traffic engineers to study the railroad crossing in question for the purpose of reaching an opinion as to the safety of the crossing. One such expert was not called to testify. The defendant railroad was not permitted to comment on the absence of this witness, a ruling that it believes was erroneous. The railroad contends that the rule established by *Santiemmo v. Days Transfer, Inc.* (1956), 9 Ill. App. 2d 487, 133 N.E.2d 539, makes the absent witness a proper subject of comment. In *Santiemmo*, the findings of the expert witness, a physician engaged for the purpose of litigation, were referred to in testimony and in argument. The court found it proper comment on the absence of the expert witness. In the instant case, no reference to the absent witness was made before the jury. Thus, no testimony by implication, without opportunity for cross-examination, occurred. Also, no witness was excluded from the courtroom because of being under a litigant's exclusive control. In *Department of Transportation v. Gonterman* (1976), 41 Ill. App. 3d 62, 354 N.E.2d 76, it was determined that where an expert witness is not called for trial, and the expert is for hire and available to either party, it is error to permit any comment on the absence of that witness. It would appear that the *Gonterman* decision more closely resembles the facts of this case, and that rule should apply here.

●■ ■ During the course of pretrial discovery, the defendant railroad requested by interrogatory a list of the plaintiff's witnesses.

Omitted from the list provided in response was State legislator Neff. Nevertheless, Mr. Neff was called to testify. The circuit court did recess the trial to permit the defendant to interview witness Neff before proceeding. The defendant now contends that this corrective measure was inadequate and Mr. Neff was erroneously permitted to testify. The sanction of barring a witness from testifying is within the discretion of the trial court. (*Brzezinski v. Gajda* (1972), 5 Ill. App. 3d 977, 284 N.E.2d 383; *Kujala v. Jackson* (1970), 123 Ill. App. 2d 11, 259 N.E.2d 648.) In exercising its discretion, the court must consider whether the omission of the witness' name was intentional or inadvertent, the opportunity of opposing counsel to interview, and the importance of the witness' testimony in the proceeding. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578.) Here, Mr. Neff's testimony was essentially cumulative in terms of establishing notice, his name was only brought to the attention of plaintiff's counsel the week of trial, and an opportunity to interview was provided. In light of these factors, it would not appear that the circuit court abused its discretion in permitting Mr. Neff to testify.

●■ ■ Three jury instructions, either given or refused, have been made the subject of our consideration by this appeal. The first was given by the trial court and charged the jury as follows:

"If you decide that the defendant was negligent and that its negligence was a proximate cause of the injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury."

"When I use the expression 'proximate cause', I mean a cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor that last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

The railroad believes this instruction was incorrectly given. It alleges no evidence to support a theory of intervening cause exists in the record. We disagree. While acknowledging that instructions should not be given unless supported by facts in the records (*Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692), in the instant case the jury did hear evidence that the pavement on the village streets was snowpacked. Since such a condition could be construed as a contributing cause, and since the trial court has broad discretion to determine what issues have been raised by the evidence (*Burge v. Morton* (1981), 99 Ill. App. 3d 266, 425 N.E.2d 539), we find no error in the instruction as given. Similarly we find no error in the circuit court's refusal to

instruct the jury that the railroad had no responsibility for maintaining the 12th Avenue approach to the railroad crossing. Our review of the record discloses that this issue was not raised by the evidence, and therefore it was not error to refuse the instruction. *Burge v. Morton.*

■ Finally, the circuit court refused a special verdict form tendered by the defendant and instead chose to give a general verdict form to the jury. We note that in its landmark decision, *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the supreme court advises that the use of special verdicts and special interrogatories will serve as a guide to assist the jury in its deliberations. Thus, while endorsing the use of special verdicts where helpful, *Alvis* does not prohibit the use of the general verdict form where it adequately charges the jury. Further, the special verdict form refused by the circuit court was defective in that it failed to provide for a potential award of punitive damages based on a finding of wilful and wanton conduct. It would not be error for the trial judge to refuse a special verdict form where that form itself is defective.

●■ Two errors were detailed in defendant's brief which, although supported by the record, would appear harmless. Plaintiff was permitted to elicit from Deborah DeCrane certain hearsay testimony concerning plaintiff's post-recovery employment. Since this inadmissible testimony was essentially cumulative, it should not provide the basis for reversible error. Also, the plaintiff was permitted to ask a single question of defendant's public works engineer which called for conjecture and speculation. While the question dealt with the railroad's position toward signalization of the 12th Avenue crossing if the village's petition had not been filed before the Illinois Commerce Commission, we find the record so replete with admissible evidence regarding the railroad's actual actions and statements as to render this single question and answer inconsequential to the verdict rendered. Perfect trials exist only in fiction, and we are not called upon to insure that the record is totally free of error. Rather, we have as our object to determine whether any error occurred which operated to the prejudice of the defendant or unduly affected the outcome below. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) No such error occurred here.

For the reasons set forth, and in reliance on the authorities cited, the verdict rendered by the circuit court of Henry County is affirmed.

Affirmed.

BARRY, P.J., and ALLOY, J., concur.