KIMBERLY K. BRYANT *et al.*, Plaintiffs and Counterdefendants-Appellees, v. FRED L. PERRY *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District   No. 2—85—0700

Opinion filed November 26, 1986.

Francis A. Spina, of Tressler, Soderstrom, Maloney & Priess, and William J. Cremer, both of Wheaton, and Howard K. Priess II, of Chicago, for appellants.

Robert L. Speers, of Lindner, Speers & Reuland, P.C., of Aurora, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendants, Fred L. Perry and United McGill Company, appeal from the trial court's order dismissing their countercomplaint against the plaintiff-counterdefendant, Kimberly K. Bryant.

Plaintiff, Kimberly K. Bryant (hereinafter Kimberly), individually and as next friend for her minor daughter, Christina Bryant (hereinafter Christina), brought suit against defendants, Fred L. Perry, United McGill Company, and E. L. Murphy Trucking Company (hereinafter defendants), for personal injuries incurred by both of them in an accident involving a car driven by Kimberly in which Christina was a passenger and a truck driven by Perry, who was employed by McGill. Murphy was later dismissed as a party defendant. The defendants filed a counterclaim against Kimberly seeking contribution. The same law firm represented Kimberly, individually, and on behalf of Christina. Another law firm represented her as a counterdefendant.

Prior to the trial date, Kimberly, on behalf of Christina, sought the court's approval of a settlement of $20,000 between Kimberly, as counterdefendant, and plaintiff Kimberly, as next friend of Christina. Over the objection of the defendants, the settlement, which included dismissal of Kimberly as a counterdefendant, was approved. This appeal followed.

The sole issue raised on appeal is whether the trial court erred in determining that the settlement between Kimberly as plaintiff on

Christina's behalf and Kimberly as counterdefendant was a good-faith settlement under the Contribution Act.

The Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) provides in pertinent part as follows:

"(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." Ill. Rev. Stat. 1985, ch. 70, pars. 302(c), (d).

The defendants contend first that the settlement in this case was not in good faith because it lacked consideration.

Defendants rely on *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729. In that case plaintiff sued defendant, Amsted, the building owner, for violations of the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). Defendant Amsted filed a third-party complaint against plaintiff's employer, Montgomery. Plaintiff reached a settlement with Montgomery, who was then dismissed from the lawsuit. After a jury trial, plaintiff was awarded $100,000 in damages. Defendant appealed alleging, *inter alia*, that the complaint against Montgomery should not have been dismissed since a release could not have been given in good faith without consideration. The appellate court found that since it was undisputed that plaintiff's injuries occurred while he was performing duties within the scope of his employment, his relief against his employer was limited to the Workers' Compensation Act (Ill. Rev. Stat. 1981,ch. 48, pars. 138.5(a), 138.11). Therefore, plaintiff had no rights outside of the Workers' Compensation Act which he could relinquish, and the settlement lacked consideration. The appellate court held that the contribution count against Montgomery must be reinstated.

Defendants raise a similar argument here. Kimberly and Christina are mother and daughter. Under the doctrine of parental immunity, Christina could not maintain an action against Kimberly. See *Wilkosz v. Wilkosz* (1984), 124 Ill. App. 3d 904.

Kimberly argues that the result in *LeMaster* is "unfair and simply doesn't make sense." She relies on two decisions based upon the Florida contribution statute, which is quite similar to Illinois', *Fuquay v. General Motors Corp.* (M.D. Fla. 1981), 518 F. Supp. 1065, and *Dudley Sports Co. v. Berry* (Fla. App. 1981), 407 So. 2d 335. In *Dudley* the minor plaintiff sued defendants, manufacturer and distributor of a baseball pitching machine which caused him personal injuries. The defendants filed a counterclaim against the minor's parents. The court upheld a settlement between the minor and his parents despite the bar of the doctrine of parental immunity on the basis that either the parents were joint tortfeasors from whom contribution could be sought, or if they were not joint tortfeasors, then no right of contribution existed as to the parents.

Before this court can reach the issue of the existence or nonexistence of consideration, we must first address the meaning of the Contribution Act in light of our supreme court's decision in *Hopkins v. Powers* (1986), 113 Ill. 2d 206. In that case, plaintiff had consumed alcoholic beverages at defendant's tavern. He was later involved in an automobile accident causing personal injuries and property damage. He settled with various claimants and then filed suit against the defendant seeking contribution for that portion of the total settlement proportionate to the relative culpability of himself and the defendant. Citing the long-standing rule in Illinois that a purveyor of intoxicating beverages may be held liable only under the provisions of the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 94 *et seq.*), and that liability so imposed is *sui generius* and exclusive, our supreme court held that the defendant was not liable in tort. Because the defendant was not liable in tort, it was held that plaintiff as a matter of law could not maintain an action for contribution under the Contribution Act.

This court has previously held that the parental-immunity doctrine does not bar a contribution action against a parent. (See *Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965.) The parental-immunity doctrine, unlike the Dramshop Act, was created by the courts, and the court is free to modify it. 105 Ill. App. 3d 965, 967.

In *Hopkins* the supreme court was dealing not with immunity from suit but the lack of a duty imposed by the Dramshop Act. (*Cf. Jodelis v. Harris* (1985), 138 Ill. App. 3d 457.) We therefore conclude that the decision in *Hopkins v. Power* does not bar a contribution action between Kimberly and the defendant.

We do not agree with the defendant that there is no consideration for the settlement between Kimberly and Christina. While we do not dispute the continued existence of the parental-immunity doctrine, as

we have previously stated, it is court-created and therefore court-modifiable where the purpose of the doctrine will not be served. (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 969.) A number of exceptions to and modifications of the doctrine have developed, including cases involving wilful and wanton conduct (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608) and where the conduct was unrelated to a family purpose (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199). See also 19 J. Marshall L. Rev. 807 (1986).

In the recent case of *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, plaintiff's decedent was electrocuted in a boating accident. Plaintiff brought suit against the manufacturer of the boat, Coast Catamaran Corporation (Coast); Coast's parent company, the Coleman Company (Coleman); and the City of Springfield (city). Coast and Coleman filed counterclaims against the pilot of the boat, Henrici, seeking contribution.

The second of the two consolidated cases concerns a covenant not to sue which was entered into between plaintiff, the city, and Henrici, whereby the city paid plaintiff the sum of $37,500 and Henrici paid plaintiff the sum of $15,000. Prior to the trial, the trial court found the settlement to have been made in good faith and dismissed Henrici from the suit.

Following a jury trial, judgment was entered in favor of the plaintiff, and defendants Coast and Coleman appealed, arguing in part that the settlement between plaintiff and Henrici was not in good faith because plaintiff's cause of action was barred by the statute of limitations at the time the settlement was entered into. Relying on *LeMaster v. Amsted Industries*, the appellate court reversed the dismissal of the contribution claim against Henrici. (*Ballweg v. City of Springfield* (1984), 130 Ill. App. 3d 241, 251-52, citing *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729.) Thereafter, plaintiff and Henrici appealed to the supreme court.

In determining that Henrici's settlement with the plaintiff was made in good faith, our supreme court stated as follows:

> "Admittedly, the plaintiff's cause of action against Henrici *could* have been barred by the statute of limitations at the time the settlement was entered into *had* such a defense been raised. However, as we stated in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 10-11, 'the potential for tort liability exists until the defense is established.' Since the statute had not been raised, Henrici was still potentially liable, and therefore, consideration was given by the plaintiff for the settlement." *Ballweg v. City of Springfield* (1986), 114 Ill. 107, 122.

█ Likewise in the case before us, no suit testing the applicability of the parental-immunity doctrine to the facts of this case was ever filed. Thus, as there has been no judicial determination that a suit would be barred, Kimberly is still potentially liable to Christina for her injuries, and, therefore, we find that there was consideration for the settlement between Kimberly and Christina.

█ Next, defendants argue that the settlement was collusive and arrived at solely to deprive them. of their contribution rights. Since Kimberly was acting both on behalf of Christina and as a counter-defendant, this makes the settlement collusive. No other facts other than this family relationship are set forth in support of this proposition. It is a generally accepted rule that there should be no conflicting interests between the infant and the party representing him. (*Clarke v. Chicago Title & Trust Co.* (1946), 393 Ill 419; *In re Marriage of Omelson* (1983), 112 Ill. App. 3d 725, 730; *Aetna Life Insurance Co. v. Strickland* (1975), 33 Ill. App. 3d 52.) In *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 930, defendant alleged that the settlement reached between plaintiff and her husband, the third-party defendant, was collusive due to the relationship of the parties. The court observed that the parties were not married at the time of the accident or at the time of the settlement. Nor did the court feel that the fact that they were friends was sufficient, *without more*, to taint the settlement, citing *Fuquay v. General Motors Corp.* (M.D. Fla. 1981), 518 F. Supp. 1065. *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 930.

In *Fuquay* the wife sued the manufacturer of a van for personal. injuries she received when the van's radiator exploded when her husband removed the radiator cap. The defendant filed a counterclaim against the husband alleging negligence in removing the cap. The husband's insurer paid the wife the maximum sum payable under his personal liability policy in exchange for the release of any liability to the wife. Husband then moved to dismiss the counterclaim of the defendants. On the issue of possible collusion between the parties, the district court found no bar to the settlement. While observing that the fact that the parties were divorced made it easier to abate concern that the judgment obtained would ultimately benefit both parties, the court found that fact not dispositive. Further, the husband's insurer paid the maximum sum available under his liability policy.

Although defendants here argued "collusion" before the trial court in opposition to the settlement, they otherwise made no objection to Kimberly's dual roles, even though they were responsible for bringing her in as a counterdefendant. Further, since any dispersal of the

money prior to Christina's 18th birthday has to be approved by the court, there is less likelihood, as in *Fuquay*, that Kimberly will herself benefit from the settlement.

It would at first appear that an unresolvable conflict exists between Kimberly as representative of Christina and as a counterdefendant. Practically speaking, however, the money paid to Christina on Kimberly's behalf is paid by the insurance company, not from Kimberly's own funds. Under those circumstances, it would be mere speculation to assume that Kimberly's motives were not directed in her daughter's best interest. We find, therefore, that the settlement was not the result of any collusion between the parties.

■ Next, defendants contend that since the same attorney represented both Kimberly in her action against defendants as well as Kimberly in her capacity as legal representative of Christina, a conflict of interest exists which amounts to collusion and, consequently, no "good faith" settlement occurred.

Rule 5—105(b) of the Code of Professional Responsibility (87 Ill. 2d R. 5—105(b)) prohibits representation of multiple parties if the exercise of the lawyer's professional judgment will be adversely affected by his representation of the other client. Further, Rule 5—105(c) requires that the lawyer obtain the consent of each client to the representation upon full disclosure. (87 Ill. 2d R. 5—105(c).) The defendants further contend that since Christina is a minor, she is not capable of understanding the full-disclosure requirement nor could she consent to the dual representation.

Attorney Wayne Jensen represented both Kimberly, individually, and Kimberly, as Christina's representative. Kimberly was also represented by another attorney hired by her insurance company as counterdefendant. Attorney Jensen was put in the position of advising Kimberly on behalf of Christina to accept or reject a settlement which she herself was proposing. However, Kimberly was represented by different legal counsel in making the settlement offer, and as pointed out above, the money was paid by the insurance company, not out of Kimberly's funds.

Defendants also argue that although Jensen valued the case at $150,000, he approved a settlement for far less than Kimberly's policy limits of $100,000. However, this court is well aware of the practical aspects of the art of negotiation, and we are inclined to believe that acceptance of the proffered settlement in this case is merely reflective of the realistic versus the optimistic view of the value of the case.

Defendants suggest that attorney Jensen found himself in a position of having to file a suit on behalf of one client against another.

However, while it might have been better practice to have separate representation, a conflict of interest sufficient to destroy the "good faith" aspect of the settlement does not appear to exist.

■ Next, defendants contend that the settlement was not in "good faith" because it was not based on Kimberly's proportional share of responsibility in causing injury to Christina. Early California decisions took the view that the price of a settlement is the prime badge of its good or bad faith. (*River Garden Farms, Inc. v. Superior Court* (1972), 26 Cal. App. 3d 986, 103 Cal. Rptr. 498.) The *LeMaster* case, previously cited, indicated that the ratio of the settlement to the final award of damages is one measure of good faith. *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 735.

However, in *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, the court concluded that more recent California opinions did not favor the ratio test. Further, the court observed that the ratio test relied on hindsight and that it was impossible to use an unknown factor, *i.e.*, a jury verdict, to test good faith prior to trial.

In *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, the plaintiff settled with the driver of the car, Look, prior to trial for $7,000 and then filed suit against defendant for $75,000. Defendant then filed a counterclaim against Look, which was dismissed due to the prior settlement. In upholding the finding of good faith, the court stated:

> "In the instant case, we conclude that the trial court was within its discretion in finding the settlement to be in good faith. There has been no jury verdict indicating the relative culpability of each tortfeasor. The only evidence presented of Look's relative culpability was the statement by the Lions Club that Look was primarily liable for plaintiff's injuries. The trial court, however, made no finding on the issue, and the record reveals no evidence presented by the Lions Club that the $7,000 settlement figure is not within the range of relative fault attributable to Look. Although the sum paid may be disproportionate to the sum prayed for in the complaint, it is not out of proportion to what the trial court could have considered the probable recovery of plaintiff." (135 Ill. App. 3d 926, 930.)

See also *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119.

The only other evidence presented by defendants that has a bearing on the proportionate liability of the parties is the statement of the police officer who investigated the accident in which the officer indicated he would have issued a traffic citation to Kimberly but he felt sorry for her due to the injuries to her daughter.

Defendants argue that the fact they ultimately settled with Christina as well as the amount of the settlement should not be considered because their settlement was not before the court at the time the good-faith issue was determined. While the existence of that settlement is part of the record before this court, that fact was not a consideration in reaching the result here. Based on the authorities cited above, we do not find the settlement to be disproportionate.

■ Finally, defendants contend that they were denied a hearing to protect their contribution claim. The record shows that defendants filed a brief in opposition to the motion for approval of the proposed settlement, and that the trial court heard argument by both sides before granting the motion. Defendant never requested any other form of hearing. The issue being raised for the first time on appeal should be deemed waived. See *Heimberger v. Village of Chebanse* (1984), 124 Ill. App. 3d 310.

As our supreme court in *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, stated:

"In reaching the conclusion that the settlement was entered into in good faith, we are not wearing blinders. We are mindful that the entire circumstances surrounding a settlement must be taken into account." (114 Ill. 2d 107, 122.)

Here the trial court specifically found that there had been no proof of any mutual mistake, fraud, collusion, or any tortious conduct or any wrongful conduct. While acknowledging suspicion arising from the relationship of the parties, the trial court found it did not rise to evidence of collusion even under the preponderance of the evidence standard.

We are of the opinion that the result reached in this case is in keeping with the purpose and spirit of the Contribution Act. As our supreme court stated in *Rakowski v. Lucente* (1984), 104 Ill. 2d 317:

"As a matter of public policy the settlement of claims should be encouraged. If we are now to add limitations not expressed in the general language of the settlement instrument or in the provisions of the Contribution Act, we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement." 104 Ill. 2d 317, 325.

Based upon the foregoing, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH, P.J., and STROUSE, J. concur.