DENNIS JACHERA *et al.*, Minors, by their Next Friend, Dennis Jachera, *et al.*, Plaintiffs, v. BLAKE-LAMB FUNERAL HOMES, INC., *et al.*, Defendants (Daniel L. Howell, Appellee; Norbert Mueller, Appellant and Counterplaintiff-Appellant; Blake-Lamb Funeral Homes, Inc., *et al.*, Counterdefendants-Appellees).

First District (2nd Division)   No. 1—88—1500

Opinion filed September 26, 1989.

Orner & Wasserman, Ltd., of Chicago (Norton Wasserman, of counsel), for appellant.

Modesto, Reynolds & McDermott, of Chicago (Gregory G. Lawton, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, passengers in a funeral limousine, brought a personal injury negligence action against its owner, Blake-Lamb Funeral Homes, Inc., and operator William McCarthy (jointly, Blake-Lamb/McCarthy), as well as Norbert Mueller, the driver of the vehicle which collided with the limousine. Mueller counterclaimed for contribution against Blake-Lamb/McCarthy. Mueller's counterclaim against Blake-Lamb/McCarthy subsequently was dismissed. Because of pretrial settlements, the cause went to trial against defendant Mueller only, resulting in a jury verdict found for plaintiff Daniel Howell (Daniel) and against Mueller.

On appeal, Mueller questions the circuit court's finding that a settlement agreement between Daniel and Blake-Lamb/McCarthy was made in good faith and contests the dismissal of his counterclaim for contribution in Daniel's case.

On August 25, 1983, all eight plaintiffs, including Daniel, were riding in the funeral limousine which had exited a cemetery onto 87th Street and was stopped at the median strip, waiting to make a turn. It was then struck broadside by Mueller's automobile. The limousine occupants, including Daniel, sustained injuries and eventually brought negligence actions against Blake-Lamb/McCarthy, and Mueller.

Mueller filed a contribution counterclaim, based in part on Daniel's underlying action, against Blake-Lamb/McCarthy. In turn, Blake-Lamb/McCarthy counterclaimed for contribution against Mueller. Blake-Lamb/McCarthy also filed a subsequent third-party complaint for contribution against South Side Home Health Care, Inc. (South Side), allegedly Mueller's employer at the time of the collision.

On September 21, 1987, settlement agreements between Blake-Lamb/McCarthy and all eight plaintiffs were presented to the circuit court for approval; Mueller objected to only that of plaintiff Pamela Howell.[1] The court expressly found that the settlements were made in good faith and dismissed with prejudice Blake-Lamb and McCarthy as parties to the suit. In an order dated May 5, 1988, Mueller's counterclaim was dismissed *nunc pro tunc* as of September 21, 1987.

The terms of the subject settlement were incorporated in an instrument entitled "Contribution Release," under which Daniel received an immediate payment of $5,600 in exchange for his release and dismissal of any claim against Blake-Lamb/McCarthy. The release further provided that Blake-Lamb/McCarthy would contribute up to an additional $11,760 to Daniel if the verdict against Mueller and/or South Side exceeded the amount of insurance coverage available to those defendants and constituted an excess judgment their insurers failed to satisfy.

The release also specified certain limitations and conditions before Blake-Lamb/McCarthy would become liable for the additional payment to Daniel Howell: (1) Daniel "must first exhaust all legal and equitable remedies against the insurers of Norbert Mueller and South Side Home Health Care, that he may have or that may be assignable to him

---

[1]The transcript of this hearing does not appear of record; according to Blake-Lamb/McCarthy, no court reporter was present. The order resulting from this hearing does reflect that Mueller's objections were directed to Pamela Howell's settlement, on grounds which the circuit court rejected, and which were unrelated to the issue on appeal.

by any joint tortfeasor, wherein a judicial finding results holding that neither insurer *** is responsible to [Daniel] or liable to indemnify any joint tortfeasor for the unsatisfied amount of said judgment, based on the merits of any such claim"; (2) "the relief sought against the insurers of Norbert Mueller and/or South Side *** in the event that an unsatisfied judgment is awarded Daniel *** must be prosecuted in good faith by either Daniel Howell or the party claiming indemnity therefrom"; and (3) if Daniel "releases, discharges, agrees to a settlement with, or in any way agrees to accept an amount from Norbert Mueller and/or [South Side], or either of their insurers in satisfaction, or partial satisfaction of any claim in law or equity he may have against them," Blake-Lamb/McCarthy would not be liable to Daniel beyond the $5,600 already paid.

The action ultimately proceeded to trial against Mueller only. On November 22, 1987, the jury returned, among others, a verdict of $68,859 against Mueller in favor of Daniel, upon which judgment subsequently was entered.

Mueller filed a post-trial motion, alleging *inter alia* that the agreement between Blake-Lamb/McCarthy and Daniel was not a good-faith settlement as a matter of law. The circuit court allowed Mueller a set-off of $5,600 (the amount paid to Daniel by Blake-Lamb/McCarthy pursuant to the settlement) and entered an order reducing the judgment for Daniel against Mueller to $63,259. In all other respects, Mueller's post-trial motions attacking the settlement and judgment for Daniel were denied.

Mueller's appeal protests the settlement between Daniel and Blake-Lamb/McCarthy. He asks us to reverse both the circuit court's finding that the release agreement was made in good faith as well as its dismissal of his counterclaim for contribution, and further requests that we remand the cause for trial on the contribution counterclaim as it relates to Daniel.

I

Mueller essentially argues that, as a matter of law, the release agreement between Blake-Lamb/McCarthy and Howell does not comply with the "good faith" requirement of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) (Act). Noting that the purpose of the Act is to promote settlements and equitably apportion damages among joint tortfeasors, he urges that the conditions provided in the agreement circumvent this policy by fomenting litigation, forbidding settlement, and undermining equitable apportionment. Mueller concludes that because the agreement thus "completely conflicts" with

the purposes of the Act, any finding of a "good faith" settlement is barred.

■ Blake-Lamb/McCarthy initially respond that because Mueller made no objection to the finding of good faith in Daniel's settlement at the September 21, 1987, hearing, or at any other time before the trial, the issue on appeal is waived. Generally, an issue not presented to or considered by the circuit court cannot be raised for the first time on appeal. (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 25, 473 N.E.2d 588.) The record, however, indicates that the issue concerning the "good faith" of Daniel's settlement was brought to the attention of the circuit court and addressed by it in Mueller's post-trial motions. The issue was not waived.

## II

■ Illinois public policy favors peaceful and voluntary resolutions of claims through settlement agreements; to establish the invalidity of such an agreement, clear and convincing evidence is required. (*McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 525, 515 N.E.2d 157; *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 915, 501 N.E.2d 263.) In order to foster certainty and encourage good-faith settlements, parties who settle in good faith are protected from contribution actions by the Act. *McKanna*, 161 Ill. App. 3d at 525; *O'Connor*, 149 Ill. App. 3d at 915-16.

■ Section 2 of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 302) "creates a right of contribution between joint tortfeasors in favor of any who have paid more than their *pro rata* share as premised upon individual culpability." (*McKanna*, 161 Ill. App. 3d at 525.) Nevertheless, an alleged tortfeasor who, prior to a judicial determination of his liability, settles in good faith, is discharged from further liability for contribution. (Ill. Rev. Stat. 1985, ch. 70, par. 302(d); *O'Connor*, 149 Ill. App. 3d at 916; *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 929, 482 N.E.2d 351.) The Act itself does not define "good faith"; the Illinois Supreme Court, however, has stated that when considering whether an agreement was made in good faith, the entire circumstances surrounding the settlement must be taken into account. (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122, 499 N.E.2d 1373; see also *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 831-32, 537 N.E.2d 871.) The courts, therefore, have refused to place great emphasis on any single factor as being determinative of good faith. (See *Ruffino*, 181 Ill. App. 3d at 831.) Once a preliminary showing of a good-faith settlement is made, a presumption of validity arises. *Ruffino*, 181 Ill. App. 3d at 829; *Bar-*

*reto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 128, 478 N.E.2d 581.

■ A settlement, then, may be considered made in good faith " 'when no tortious or wrongful conduct on the part of the settling [party] has been shown.' " (*Bituminous Insurance Cos. v. Ruppenstein* (1986), 150 Ill. App. 3d 402, 405, 501 N.E.2d 907, quoting *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94, 463 N.E.2d 792.) Collusive settlements will not be considered as having been made in good faith. See *Barreto*, 133 Ill. App. 3d at 128.

■ There is no evidence here that Blake-Lamb/McCarthy and Daniel acted in collusion, nor misrepresented or concealed any information concerning the accident. Further, Mueller has not demonstrated any tortious or wrongful conduct on the part of either Blake-Lamb/McCarthy or Daniel. Mueller nevertheless insists that no evidence beyond the release agreement document itself is required to establish the bad-faith character of the settlement; he advances the novel argument that a good-faith settlement cannot be found here because the release agreement is "totally and completely in conflict with the established purposes of the Act." No controlling Illinois authority has been found for the foregoing proposition.

■ Challenges to "good faith" settlements have been based upon: (1) the ratio of the amount of the settlement to the eventual jury verdict (*Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858; *Lowe*, 124 Ill. App. 3d 80; *Barreto*, 133 Ill. App. 3d 119; *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 484 N.E.2d 1232; *O'Connor*, 149 Ill. App. 3d 911; *Bryant v. Perry* (1986), 154 Ill. App. 3d 790, 504 N.E.2d 1245; *McKanna*, 161 Ill. App. 3d 518; *Van Berkum v. Christian* (1988), 175 Ill. App. 3d 62, 530 N.E.2d 52; *Ruffino*, 181 Ill. App. 3d 827); (2) that the settlement did not accurately reflect the jury's ultimate apportionment of liability (*Lowe*, 124 Ill. App. 3d 80; *Wasmund*, 135 Ill. App. 3d 926; *Brown v. Torin Corp.* (1988), 175 Ill. App. 3d 544, 529 N.E.2d 1077); (3) lack of consideration in the settlement (*Ballweg*, 114 Ill. 2d 107; *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367; *Wasmund*, 135 Ill. App. 3d 926; *Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 498 N.E.2d 690; *Bryant*, 154 Ill. App. 3d 790; *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932; *Ellis v. E.W. Bliss & Co.* (1988), 173 Ill. App. 3d 779, 527 N.E.2d 1022; *Brown v. Torin Corp.*, 175 Ill. App. 3d 544); (4) collusion between the settling parties (*Wasmund*, 135 Ill. App. 3d 926; *Bryant*, 154 Ill. App. 3d 790); and (5) the absence of meaningful discovery prior to settlement (*Ruffino*, 181 Ill. App. 3d 827).

■ Accepting *arguendo* the proposition that a settlement which circumvents the Act's purposes obviates a good-faith finding,[2] does Mueller present clear and convincing evidence to establish the invalidity of Daniel's agreement with Blake-Lamb/McCarthy? We think not. First, Mueller insists that the settlement "incites litigation" by requiring Daniel to obtain an assignment of Mueller's and South Side's rights to sue their insurers on a bad-faith excess liability claim, resulting in two additional lawsuits. This concern is unfounded; Daniel's right to obtain this assignment and pursue these actions always existed and was not created by the settlement.

Nor does the release agreement "forbid" Daniel's settlement with Mueller. The agreement does not so state. Rather, the document provides for an immediate payment of $5,600 in exchange for the release and dismissal of Daniel's claims against Blake-Lamb/McCarthy. In a separate promise, clearly distinguished as "Part II," Blake-Lamb/McCarthy agreed to pay Daniel an additional amount to satisfy any subsequent judgment in excess of insurance coverage available to Mueller. The latter payment is contingent upon certain conditions, which mainly ensure Daniel would make an adequate effort to collect the entire subsequent judgment from other sources (by pursuing bad-faith claims against Mueller's insurers) before Blake-Lamb/McCarthy became liable for an additional sum of money. By requiring Daniel to establish a legitimate, unsatisfied judgment, these provisions prevent him for entering into a sham agreement with Mueller that might result in unintended additional liability for Blake-Lamb/McCarthy. Daniel was not "forbidden" from settling with Mueller; a settlement with Mueller simply would result in Daniel's forfeit of any claim to the additional $11,760 from Blake-Lamb/McCarthy.

■ Mueller's final objection is that the settlement undermines equitable apportionment and does not protect him as a nonsettling defendant. It has been held, rather, that the Act is intended to protect those who settle from the hardest bargainer who might "hold the other[ ] [litigants] hostage to its own intransigence." *Doellman,* 147 Ill. App. 3d at 851.

Nor does the settlement undermine equitable apportionment. The initial payment of $5,600 represented about 40% of the $13,900 special damages claimed in a case where liability was disputed. In considering

---

[2]Blake-Lamb/McCarthy contends that the standard is not whether the settlement promotes the purposes of the Act, but whether it was entered into in good faith. The better argument is that a settlement which circumvents the twofold purpose of the Act (promote settlements, equitably apportion damages) would not constitute a good-faith settlement. See *Lowe,* 124 Ill. App. 3d 80.

whether a settlement is disproportionate to the *ad damnum* of the complaint, the circuit court is free to consider any probable recovery or even the possibility of an unexpected result. (*O'Connor*, 149 Ill. App. 3d at 916.) Under the circumstances, Mueller's challenge to the settlement must be rejected since he has not established that "the difference between the settlement amount and the value of the injured plaintiff's claim for compensatory damages was substantial enough to smack of 'bad faith,' collusion or fraud." *Mallaney v. Dunaway* (1988), 178 Ill. App. 3d 827, 833, 533 N.E.2d 1114. See also *Lowe*, 124 Ill. App. 3d at 94.

Further, the amount of the settlement compared to the subsequent jury award against Mueller does not demonstrate bad faith, collusion, or fraud. Since damages are often speculative and liability uncertain, the amount of a settlement legitimately might be far different from a damage award which results from full litigation. (*O'Connor*, 149 Ill. App. 3d at 916.) An ensuing jury verdict is not necessarily an accurate measure of good faith in a settlement made prior to trial; at the time of the settlement, it is an unknown factor, so that any analysis based on the subsequent verdict necessarily relies on hindsight. (*Lowe*, 124 Ill. App. 3d at 94.) Here, the settlement was reached prior to trial, when both liability and the amount of damages due Daniel were uncertain. Mueller's belated objection that the settling defendants were able to settle for a lesser sum is based on hindsight made possible only by reference to the eventual jury verdict; under the totality of the circumstances surrounding the agreement, it cannot be said that the circuit court erred in finding good-faith settlement. Blake-Lamb/McCarthy's advantageous arrangement with Howell does not, by itself, make it a bad-faith settlement. See *Pell*, 123 Ill. App. 3d at 435.

Mueller has failed to establish, by clear and convincing evidence, any collusion, or tortious or wrongful conduct on the part of the settling parties. (*Bituminous Insurance Cos.*, 150 Ill. App. 3d at 405.) Further, the terms of the settlement do not suggest bad faith, collusion, or fraud. (*Mallaney*, 178 Ill. App. 3d at 833.) There is no basis here to disturb the circuit court's finding of a good-faith settlement; the dismissal of Mueller's counterclaim for contribution accordingly must be affirmed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.