*In re* GUARDIANSHIP OF CLIFFORD A. BABB (Glenn P. Babb, Guardian of the Person and Estate of Clifford A. Babb, Petitioner-Appellee, v. The City of Champaign, Respondent-Appellee (Ed Roesch Equipment Company, Intervening Petitioner-Appellant; Reach All *et al.*, Intervenors-Appellants)).

Fourth District   No. 4—90—0425

Opinion filed June 29, 1992.—Rehearing denied August 27, 1992.

James C. Kearns, of Heyl, Royster, Voelker & Allen, of Urbana, for appellant Ed Roesch Equipment Company.

Richard F. Record, Jr., and Mark R. Karpus, both of Craig & Craig, of Mattoon, for appellant Goforth Industries, Inc.

Lord, Bissell & Brook, of Chicago (R. Bruce Duffield, Hugh C. Griffin, Diane I. Jennings, and Rebecca S. Kallas, of counsel), for appellant Reach All.

Donald M. Tennant and Renee L. Monfort, both of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant Sweeney Industries, Inc.

John T. Coleman and Richard B. Foster III, both of Baker & McKenzie, of Chicago, for appellant Ford Motor Company.

Ronald F. DeNardis, of DeNardis, McCandless & Mueller, P.C., of Detroit, Michigan, for appellant Parker Fluid Connectors.

Richard R. Harden, of Thomas, Mamer & Haughey, of Champaign, for appellee City of Champaign.

JUSTICE KNECHT delivered the opinion of the court:

Ed Roesch Equipment Company (Roesch) appeals from an order of the Champaign County circuit court approving a settlement agreement between the estate of Clifford Babb and the City of Champaign (City) in this guardianship case and before any lawsuits were filed in relation to the injuries underlying the claim upon which the settlement agreement was based. On appeal, we have allowed Reach All, Goforth Industries, Inc. (Goforth), Ford Motor Company (Ford), Sweeney Industries (Sweeney), and Parker Fluid Connectors (Parker) to intervene as appellants. We affirm.

Clifford Babb, a city employee, sustained severe and permanent injuries on September 14, 1988, when he fell 20 to 40 feet, onto his head, from a cherry picker when the truck supporting the cherry picker caught fire. Clifford was then 33 years old. Medical records accompanying the guardianship petition indicate Clifford suffers severe cognitive deficits; his cognitive abilities are below the first percentile for American adults his age. His reading, writing, and mathematical skills are poor and he has difficulty with reasoning and memory. In short, the medical reports conclude Clifford will be unable to manage his own affairs for the rest of his life. The Champaign County circuit court appointed Glenn Babb, Clifford's father, as his guardian.

Glenn, as guardian of Clifford's estate, petitioned the court for approval of a partial settlement, with the City, of the "personal injury claim." The petition alleged there were meritorious primary liability claims available against the manufacturer, distributor, modifier, and component suppliers of the truck. Secondary liability could, according to the petition, be asserted against the City by the primary defendants in the contemplated action, exposing the City to substantial financial liability.

The petition also alleged an agreement wherein the City would be released from secondary liability in exchange for payment of $400,000 from the City's insurer to Clifford's estate. The workers' compensation claim was not settled and the parties agreed benefits would continue to Clifford. The attorney for the Babbs, Robert Auler, was to receive $133,333.33 of the $400,000 as the fee for legal representation in the "partial settlement." Further, Auler was to receive $35,000 to cover expenses incurred during litigation of primary liability.

The parties did not submit the agreement itself to the court; the petition contained only a description of the agreement. The court entered an order allowing Glenn's petition seeking approval of the settlement agreement, stating: "[T]he petition is allowed and the settle-

ment of the potential claim or claims against the City of Champaign in the sum of 400,000 dollars is authorized and Attorney Robert Auler is directed to proceed with all steps necessary to secure the afore said [*sic*] settlement."

Glenn and the City filed a motion for a finding of good faith on the same day the court entered the above order. Attached to the motion was a copy of the settlement agreement and release. The settlement agreement itself provided, in pertinent part:

"1. The parties to this contract agree that CHAMPAIGN[, the City,] shall pay to BABB the amount of $400,000.00, of which amount $50,000.00 shall be without recourse. BABB shall repay to CHAMPAIGN, or its insurer, the amount of $350,000.00 from any recovery BABB may receive from any other party by settlement, verdict, judgment or otherwise, pertaining to the injuries and damages suffered by CLIFFORD BABB as aforesaid.

\* \* \*

3. The parties to this contract agree that BABB waives, releases and forever discharges, in favor of CHAMPAIGN, any rights BABB has to recover any attorney's fee and costs out of sums to be paid to CHAMPAIGN, or its insurer, as reimbursement or as a credit against future payments, for any payments CHAMPAIGN, or its insurer, has made pursuant to its obligation to CLIFFORD BABB under the Workers' Compensation Act. BABB further agrees to negotiate and consummate a contract with any attorneys retained subsequent to Robert I. Auler whereby a waiver, release and discharge of said attorney fee, plus costs, is incorporated as part of said retention of counsel.
\* \* \*

4. The parties to this contract agree that CHAMPAIGN, or its insurer, will continue to meet all legal obligations to CLIFFORD BABB pursuant to the Workers' Compensation Act despite any right CHAMPAIGN may have to suspend payments from said obligations by operation of law because of any recovery of any settlement, verdict or judgment, or any partial recovery of any settlement, verdict or judgment, by BABB against any other party for the injuries and damages suffered by CLIFFORD BABB as aforesaid, and CHAMPAIGN will continue to so refrain from suspending payments from its Workers' Compensation Act obligations until all settlements, verdicts or judgments against all parties against whom BABB makes a claim have been fully paid to BABB. At that time CHAM-

PAIGN, or its insurer, shall be entitled to suspend payments as permitted by law to the extent any sums received by BABB by settlement, verdict or judgment from other parties exceed the total amount BABB is obligated by this agreement to repay to CHAMPAIGN, or its insurer, at that time.

5. The parties to this contract agree that settlement will not be made by BABB against any third party without the written consent of CHAMPAIGN.

\* \* \*

9. The parties to this contract agree that it is conditioned upon entry of an Order by a Court of competent jurisdiction that this Settlement Agreement and the release contemplated in Paragraph 10 below, are made in good faith for purposes of Chapter 70, section 301, *et seq.*, of the Illinois Revised Statutes, commonly known as the Contribution Act.

10. The parties to this contract agree that upon a finding of good faith as contemplated in Paragraph 9 above, BABB will execute a full and final release in favor of CHAMPAIGN and its insurer.''

Roesch's brief indicates counsel for the City represented to the court, outside the record, that the then present cash value of past and future workers' compensation payments (the value of the City's lien) was estimated to be $2,400,000.

After receiving notice from Auler of a claim against Roesch for Clifford's injuries, Roesch, seller of the truck to the City in 1979, filed a petition seeking to intervene herein and object to Glenn's motion for a finding of good faith. Roesch's petition alleged that because the settlement was contingent on a finding of good faith, (1) the petition therefore sought an advisory opinion from the court, (2) the good-faith question was premature because not all necessary parties had been made parties to the proceedings, and (3) the settlement itself was not executed in good faith. The court apparently granted Roesch's motion to intervene.

The circuit court subsequently sent letters to each party stating, in part:

"[T]he 'Settlement Agreement', which is the subject at hand, was not fully—and in the court's view, adequately—described in the March 13th Petition for Approval to Settle Cause of Action. The actual 'Settlement Agreement' is apparently contingent upon the court's finding good faith and contains what is commonly known as 'loan receipt' provisions that gives a payback to the City of Champaign of $350,000 of a total $400,000

under certain conditions, although the attorney's fee is payable presently and based upon the entire cash settlement amount of $400,000. The court is *not* at this time granting to the guardian of the estate and person of Clifford A. Babb approval to enter into the 'Settlement Agreement' attached to the motion for a good faith finding. Although that 'agreement' has been signed, there has not been any execution of it, if the contingency of a finding of good faith remains in effect, as I assume it does. It goes without saying that the court will not decide whether or not the 'settlement' is in good faith." (Emphasis in original.)

The court appointed a guardian *ad litem*, Michael Tague, to review the settlement proposal and advise the court as to Clifford's best interests. Tague concluded the proposed settlement agreement was in Clifford's best interests.

The court then sent letters to each party directing Glenn and the City to resubmit the settlement agreement with the additions recommended by Tague and the City. The court also stated: "A contingency clause in my opinion renders a finding of good faith inappropriate. If the contingency of a finding of good faith is removed from the settlement agreement, I will entertain a Motion for finding in good faith." Later correspondence from the court to the parties indicated the court did not intend to imply it would automatically make a finding of good faith.

Glenn and the City filed herein a second petition for approval to settle cause of action and a petition for finding of good faith. The revised settlement agreement omitted the good-faith-finding requirement but added new language. The following language was added to paragraph four of the original agreement:

"It is the intention of this Agreement that the entitlement to suspension of workers' compensation benefits, as permitted by law, shall not exceed the net sums received by BABB from any civil litigation arising out of the events giving rise to his work-related injury. The parties recognize that the current state of the Illinois law relating to the mechanics of suspension of payments is unsettled and the parties wish to fix their respective rights relating to a potential for suspension of payments and to such extent their Agreement herein relating to suspension of payments shall be contractual between them."

The revised agreement also provided if aggregate payments of all settlements or verdicts against other parties is less than $350,000, Babb is not obligated to pay back any sums other than those sums less than $350,000 actually recovered from third persons.

The court approved the "revised settlement agreement" between Babb and the City and made a separate finding of good faith. Roesch, as intervenor, filed a timely notice of appeal, invoking jurisdiction under Supreme Court Rule 304(b) (134 Ill. 2d R. 304(b)), because the circuit court refused to grant its motion for a Rule 304(a) (134 Ill. 2d R. 304(a)) finding.

The parties agree Babb filed a complaint on August 24, 1990, against Roesch, Reach All, Goforth, Ford, Sweeney, Parker, Delta Mobile Testing, and TBA Sales alleging various products liability theories. After the complaint was filed, Roesch and Babb entered into a tentative settlement agreement; the circuit court, however, denied Roesch's motion for a good-faith finding in that case.

Various defendants then filed third-party complaints seeking contribution from the City. The City then moved to dismiss all third-party complaints and to stay proceedings pending this court's decision on Roesch's appeal herein from the good-faith finding entered in the agreement between Babb and the City. The record does not reveal the court's ruling on this motion. Reach All, Goforth, Ford, Sweeney, and Parker moved to intervene as appellants in this cause, however, to protect their contribution rights against the City. This court granted the motions.

"An Act in relation to contribution among joint tortfeasors" (Act) (Ill. Rev. Stat. 1987, ch. 70, pars. 301 through 305) discharges from further liability for contribution an alleged tortfeasor who, prior to a judicial determination of liability, settles in good faith. (Ill. Rev. Stat. 1987, ch. 70, pars. 302(c), (d); *Jachera v. Blake-Lamb Funeral Homes, Inc.* (1989), 189 Ill. App. 3d 281, 285, 545 N.E.2d 314, 317.)

> "Settlement agreements *** are supported by a public policy which favors the peaceful and voluntary resolution of claims. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.) Where there is a resolution of a claim by virtue of a release or covenant, a presumption of validity is created. (*McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 417 N.E.2d 705.) Thereafter, the party challenging the release carries the burden of proving any assertion of invalidity. (*Hudson v. Thies* (1962), 35 Ill. App. 2d 189, 182 N.E.2d 760.) The evidence [of invalidity] must be 'clear and convincing' inasmuch as the law favors compromise. *Martin v. Po-Jo, Inc.* (1969), 104 Ill. App. 2d 462, 244 N.E.2d 851." *Wasmund v. Metropolitan Sanitary District of Greater Chicago* (1985), 135 Ill. App. 3d 926, 928, 482 N.E.2d 351, 352-53.

48

See also *Cleveringa v. J.I. Case Co.* (1989), 192 Ill. App. 3d 1081, 1085, 549 N.E.2d 877, 879; *Pritchard v. SwedishAmerican Hospital* (1990), 199 Ill. App. 3d 990, 996-97, 557 N.E.2d 988, 992-93.

Roesch and the intervenors first contend the circuit court should not have ruled on Babb's motion for finding of good faith. They assert such proceedings were improper in the guardianship case, and should have occurred *only* after the filing of a personal injury suit. They present several arguments in support of this position.

First, Roesch argues the good-faith question was not ripe for judicial determination because there was no pending litigation and, thus, the need for relief was speculative. Roesch cites *dicta* from *Aetna Life Insurance Co. v. Haworth* (1937), 300 U.S. 227, 81 L. Ed. 617, 57 S. Ct. 461, to support its ripeness argument. There, the Court distinguished actual justiciable controversies from hypothetical or abstract disputes. Roesch argues until litigation was filed, no one knew who the defendants would be and whether they would seek contribution from the City. The City's claim for relief was speculative because the circuit court could not know whether Glenn would actually file any lawsuits on Clifford's behalf, as there were no suits pending when he entered the settlement agreement herein. The need for a good-faith finding was speculative until the filing of contribution claims. Roesch maintains any named defendants should instead make a determination as to whether and/or when to seek contribution from the City after the filing of a lawsuit by Babb; at such a contribution hearing, not before, the good-faith issue would be raised by the defendants seeking contribution from the City.

The City responds by noting the Act does not limit the time for settling claims. "A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." (Ill. Rev. Stat. 1987, ch. 70, par. 305.) In *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 196, 473 N.E.2d 939, 941, the Illinois Supreme Court interpreted this section of the Act, stating:

> "We interpret section 5 as the Appellate Court, First District, did in *Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240. In that case, the appellate court held that the language in section 5 providing that a contribution claim may be asserted by a 'separate action before or after payment' covers situations where no suit is pending which was initiated by the injured party \*\*\*."

In *Christmas v. Hughes* (1989), 187 Ill. App. 3d 453, 543 N.E.2d 274, the plaintiff sustained injuries in a collision between a Yellow

Cab, driven by Lawrence Williams, and a car driven by Jesse Hughes. She executed a covenant not to sue the Yellow Cab Company, its agents, servants, and employees in exchange for $300,000. Approximately one year later the plaintiff filed suit against Hughes, who immediately filed a third-party complaint for contribution from Williams. The circuit court dismissed the third-party complaint because Williams was protected by plaintiff's covenant not to sue. The appellate court affirmed, holding the Act did not require a showing of good faith but required Hughes prove the covenant was executed in bad faith. *Christmas*, 187 Ill. App. 3d at 455, 543 N.E.2d at 276.

The same court approved a similar pretrial settlement in *Wasmund*. The plaintiff there sustained injuries when the car in which she was a passenger hit a raised manhole. Robert Look was the driver of the car. Prior to suit, the plaintiff's insurer settled a claim against Look for $7,000 and the plaintiff executed a covenant not to sue him. The plaintiff then filed suit against various parties. One defendant filed a third-party contribution claim against Look. The circuit court dismissed the third-party complaint because of the covenant the plaintiff had executed. *Wasmund*, 135 Ill. App. 3d at 927-28, 482 N.E.2d at 352.

Roesch's ripeness argument lacks merit because the Act does not preclude prelitigation settlement agreements. The *Christmas* and *Wasmund* courts did not set aside the settlement agreements entered before litigation. Further, section 5 of the Act (Ill. Rev. Stat. 1989, ch. 70, par. 305), as well as *Laue*, allow Roesch to file contribution claims at any time against any of the defendants subsequently named in a lawsuit. Settlement is a goal of the Act. That goal would be thwarted if an injured party is absolutely required to file a personal injury action *before* a settlement could occur and a good-faith determination could be made.

Roesch and the intervenors next argue the circuit court should not have ruled on Babb's motion for a good-faith finding because it denied them due process. Reach All maintains where the injured claimant and the settling tortfeasor institute proceedings to determine whether the settlement was made in good faith for purposes of the Act, parties affected by such a finding are entitled to notice and an opportunity to object. Reach All contends the guardianship proceeding herein was not the proper forum for determining the contribution rights of nonparties because the only evidence before the court was of the occurrence of the injury. There were no affidavits or depositions indicating the cause of the accident and the relative liabilities of potential parties. Reach All claims the court should have reserved ruling

on Babb's motion until Babb filed suit and all parties had a chance to investigate the accident and present factual material to the court. Although a hearing to determine good faith may be informal, Reach All argues no court has ever held such a hearing may be so informal as to eliminate the rights of the affected parties to receive notice and be heard *before* their rights of contribution against one or more parties are foreclosed.

Illinois courts have not required a separate evidentiary hearing to determine good faith. Instead, the circuit court has discretion to determine what type of hearing is necessary to fully adjudicate the issue of good faith. (*Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 765, 484 N.E.2d 1232, 1235; see also *Lorenz v. Air Illinois, Inc.* (1988), 168 Ill. App. 3d 1060, 1064, 522 N.E.2d 1352, 1355.) The court can decide the good-faith issue on the basis of the arguments of trial counsel alone. (*McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 526, 515 N.E.2d 157, 163; see also *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 128, 478 N.E.2d 581, 587.) The court can also base the decision on affidavits, depositions and other discovery materials of record. *Baretto*, 133 Ill. App. 3d at 128, 478 N.E.2d at 587, citing *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 96, 463 N.E.2d 792, 793.

Roesch's due-process argument focuses on the issue of necessary parties. Roesch contends the circuit court prematurely considered the good-faith issue because not all necessary parties were present.

"A necessary party is one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence; (2) to reach a decision which will protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy." (*Flashner Medical Partnership v. Marketing Management, Inc.* (1989), 189 Ill. App. 3d 45, 53, 545 N.E.2d 177, 182.)

(See also *West Bend Mutual Insurance Co. v. Salemi* (1987), 158 Ill. App. 3d 241, 252, 511 N.E.2d 785, 791.) This definition of a "necessary party" assumes the presence of a pending lawsuit. Because the Act allows settlement before a lawsuit has filed, the "necessary party" concept is irrelevant here.

Goforth argues the hearing on the settlement agreement is analogous to a declaratory judgment proceeding. (*Banks v. R.D. Werner Co.* (1990), 201 Ill. App. 3d 762, 559 N.E.2d 217.) Under this analysis, the court erred in considering Babb's motion because there was no ac-

tual controversy, no discovery, and not all necessary parties were present. We do not consider the analogy to declaratory judgment proceedings relevant or helpful in this action.

■ The settlement agreement did not deny Roesch or the intervenors due process of law. The fourteenth amendment's due-process clause protects the interests a person has already acquired in the property. (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 576, 33 L. Ed. 2d 548, 560, 92 S. Ct. 2701, 2708.) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709; see also *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376.

The intervenors' claims to contribution were too speculative, at the time Babb and the City entered the settlement agreement, to constitute property interests protectable by the due-process clause. Although the settlement agreement indicated Babb intended to pursue litigation, no complaint had yet been filed and the court could not be certain a complaint would ever be filed. The court could not have known whom plaintiff would sue if he did file a complaint. Nor was it certain plaintiff would prevail in the personal injury suit. Even if plaintiff won, the court could not have predicted the damages award and the parties from whom plaintiff might recover. The foreclosure of a speculative right of contribution by potential parties to a lawsuit not yet filed does not constitute a denial of due process.

The final argument made in support of the claim that the circuit court prematurely considered the good-faith issue involves discovery. Once a showing of good faith has been made, the burden shifts to the party challenging it to show the settlement was not in good faith or was collusive. (*Barreto*, 133 Ill. App. 3d at 128, 478 N.E.2d at 588.) Although it bore this burden, Roesch argues it could not engage in discovery and, thus, could not sustain the burden, stating:

> "CHAMPAIGN was allowed by the Court to present to the Court a motion on which ROESCH had the burden of proof; CHAMPAIGN was thus allowed to choose the forum and the time to present the motion; it chose circumstances under which ROESCH had no opportunity to gather evidence."

Because Roesch was unable to engage in discovery, it argues the court made a decision without all relevant facts, and thus failed to consider the totality of the circumstances.

The City contends Roesch has waived this argument because it failed to ask the circuit court for leave to conduct discovery or for a continuance.

██ The First District Appellate Court addressed such a discovery issue in *Snoddy v. Teepak, Inc.* (1990), 198 Ill. App. 3d 966, 556 N.E.2d 682. There, the plaintiffs sued Stauffer Chemical Company and PPG Industries, alleging the companies manufactured or supplied one of the chemicals used in the Teepak factory which allegedly injured the plaintiffs. The plaintiffs and Teepak reached a settlement agreement and Teepak sought a hearing on its motion for a good-faith finding. At the hearing, Stauffer and PPG argued discovery was necessary to challenge the good faith of the settlement agreement. The circuit court stated the standard for determining good faith was the absence of tortious conduct. (*Snoddy*, 198 Ill. App. 3d at 969, 556 N.E.2d at 684.) Stauffer and PPG subsequently filed motions to compel outstanding discovery. The court denied these motions, ruling sufficient evidence had been heard to preclude the need for an evidentiary hearing. The court approved the agreement because there was no evidence of tortious conduct. On review, the appellate court stated:

> "[T]he trial court did not abuse its discretion by finding the settlement in good faith, even though there were outstanding discovery requests, and by denying an evidentiary hearing. The question of whether additional materials are necessary to make a finding of good faith is subject to the trial court's discretion. [Citations.] The trial court refused to compel the requested Stauffer and PPG discovery because its scope was broad and not calculated to develop specific probative evidence, regarding the issue of fraud, collusion, or tortious conduct. The discovery requests were merely a 'fishing expedition,' which would have been conducted with the hope of finding something relevant. Accordingly, there is no merit to defendants' claim that the lack of discovery precludes a finding of good faith." (*Snoddy*, 198 Ill. App. 3d at 969, 556 N.E.2d at 684.)

(See also *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 830 & n.1, 537 N.E.2d 871, 873 & n.1.) Roesch's discovery argument is thus without merit.

The circuit court properly considered Babb's petition for partial settlement of his personal injury claim with the City.

The second issue on appeal is whether the circuit court erred in finding good faith. Roesch and the intervenors argue the settlement was not a settlement but a loan-receipt agreement. They urge this

court to hold loan-receipt agreements invalid under the Act and contrary to public policy.

> "Loan receipt agreements have been found to exist where the benefit received by the plaintiff must be repaid to the defendant upon settlement with or judgment against a third party. (*Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382; *Schoonover v. International Harvester Co.* (1988), 171 Ill. App. 3d 882, 525 N.E.2d 1041.)" *Cleveringa*, 192 Ill. App. 3d at 1087, 549 N.E.2d at 881.

Reach All contends the loan-receipt agreement here was not contemplated by the Act because it circumvents the Act in two ways. First, the amount of the settlement would not be set off from any judgment against the nonsettling defendants because Babb must repay the settlement money to the City. As noted in Reach All's brief:

> "Although in this case $50,000 was purportedly paid 'without recourse,' the order below required Babb to immediately set aside $35,000 to finance further litigation (which would benefit the City because its worker's [sic] compensation lien was not waived) and also purchased Babb's agreement to forego his right to demand that the City share in any further recovery expenses. Specifically, the City, by statute, would be required to pay 25 percent of any recovery on its worker's [sic] compensation lien to Babb's attorney. (Ill. Rev. Stat. ch. 48, par. 138.5(b). See, *e.g.*, *Langley v. H.K. Ferguson Co.*, 186 Ill. App. 3d 1036, 542 N.E.2d 1200 (1989).) Under the agreement, Babb's attorneys are required to forego that recovery, thus looking only to Babb for recovery of their fees, a potential savings to the City of as much as $600,000 if it recovers its full lien at a claimed value of $2.4 million."

Second, Reach All contends the agreement circumvents the Act because under its terms the City would, in essence, be maintaining an action for contribution through the loan-repayment scheme.

Reach All cites two cases in support of its arguments, *In re Waverly Accident of February 22-24, 1978* (M.D. Tenn. 1979), 502 F. Supp. 1, and *Moore v. Subaru of America* (10th Cir. 1989), 891 F.2d 1445. A review of both cases reveals neither is helpful. The agreement in *In re Waverly Accident* was quite different from that in this case. There, the agreement required plaintiff relinquish a great measure of control over settlement with other respondents in order to obtain the settlor's guaranty of recovery. The *Moore* case is distinguishable because Oklahoma law clearly does not recognize loan-receipt agreements as valid loan transactions. (See *Moore*, 891 F.2d at 1450.)

The Illinois Supreme Court has expressly sanctioned loan-receipt agreements. See *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 361-64, 303 N.E.2d 382, 385-87 (although there contemplating the efficacy of such agreements in situations in which a concurrent tortfeasor may escape liability and judgment by loaning funds to a plaintiff).

Goforth argues although the Illinois Supreme Court sanctioned loan-receipt agreements in the early 1970's (*Reese*, 55 Ill. 2d at 364, 303 N.E.2d at 387; *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23), such agreements became invalid after the court's decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and enactment of the Act. Goforth claims *dicta* in *Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533, 563 N.E.2d 410, *cert. denied* (1991), 499 U.S. 976, 113 L. Ed. 2d 720, 111 S. Ct. 1623, supports its argument:

> "Sections 2(c) and 2(d) [(Ill. Rev. Stat. 1987, ch. 70, pars. 302(c),(d))] explain the only way a defendant can escape joint and several liability under the Act—a release, or covenant not to sue or not to enforce judgment of that tortfeasor's liability, which a plaintiff gives in good faith." (*Henry,* 138 Ill. 2d at 542, 563 N.E.2d at 414-15.)

If loan-receipt agreements were still valid, Goforth asserts the court would have included them in its list of ways a defendant can escape joint and several liability. *Henry* never mentions loan-receipt agreements.

Roesch objects to the City, rather than Babb, receiving the first $2,750,000 Babb recovers from third parties, without any liability for its own misconduct. According to Roesch, the settlement agreement leaves the City in a better financial position than it would have been in without such an agreement. Under the terms of the agreement, the City is funding litigation against what otherwise would have been joint tortfeasors. And finally, Roesch maintains the loan-receipt agreement frustrates the purpose of the Act, which is to apportion liability based on fault.

The City contends there was no loan-receipt agreement because the agreement contained no absolute payback requirement. Instead, the agreement allows Babb to keep $50,000. Further, there is *no* requirement Babb file a lawsuit against anyone. If the agreement was a loan-receipt agreement, the City argues it was made in good faith and should be accepted, as have other loan-receipt agreements as shown by the opinions of other Illinois courts. *Reese* did not raise or

address good faith, though the court approved the loan-receipt agreement. The court again approved a loan-receipt agreement in *Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 412 N.E.2d 518, except to the extent the agreement allowed double recovery.

> "[A] loan receipt agreement between a settling defendant and the plaintiff will be given effect as a loan agreement only to the extent that the money advanced thereunder is to be repaid by plaintiff to the defendant. (82 Ill. 2d at 210.) Whatever amount of the loan would be forgiven if the loan agreement were carried out according to its literal terms, however, is treated as an ordinary, unconditional payment for a covenant not to sue and must be set off against the verdict as a partial satisfaction of judgment. (82 Ill. 2d at 210.)" *Schoonover v. International Harvester Co.* (1988), 171 Ill. App. 3d 882, 885, 525 N.E.2d 1041, 1043.

See also *Greco v. Coleman* (1988), 176 Ill. App. 3d 394, 399-400, 531 N.E.2d 46, 50.

■ In the absence of a supreme court decision or statute to the contrary, the court's decision in *Reese* continues as the law of this State: loan-receipt agreements are valid. Passage of the Act has not rendered such agreements invalid as against public policy. The agreement in this case was valid and the court did not err in entering a finding of good faith. Roesch's presence at the hearing on good faith rendered the proceedings adversarial. At this hearing, the court fully considered the agreement. There was no evidence the guardianship was filed to circumvent the Act and no evidence indicating wrongful or tortious conduct in the making of the settlement agreement. An advantageous settlement is a far cry from a collusive one.

Roesch next argues the settlement agreement was not in good faith because it does not reduce litigation. It sets aside $35,000 to fund future litigation and eliminates the incentive to settle with other defendants. Roesch also contends the agreement gives Babb's power to decide to settle with other defendants to the City.

■■ ■ The agreement does, however, reduce litigation, as it removes the City from the list of defendants that can be named in a lawsuit, and precludes litigation by such defendants seeking contribution from the City.

> "A settlement agreement may be considered made in good faith when it is based on consideration (*Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 849-50; see also

*Ballweg,* 114 Ill. 2d at 122) and when no tortious or wrongful conduct on the part of the settling party has been shown. *(Jachera v. Blake-Lamb Funeral Homes, Inc.* (1989), 189 Ill. App. 3d 281, 286.)" *(Pritchard,* 199 Ill. App. 3d at 997, 557 N.E.2d at 992.)

"[T]he good faith of a settlement is not judged by the obstacles it creates for the nonsettling tortfeasor." *(Cleveringa,* 192 Ill. App. 3d at 1086, 549 N.E.2d at 880.) Further, a settlement agreement is not made in bad faith even if its purpose is to eliminate third-party litigation. *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 752, 520 N.E.2d 932, 937.

Trial courts have the discretion to determine whether a settlement has been made in good faith. A Federal district court, in attempting to discern some guiding principles from Illinois cases as to good-faith settlements, noted three important considerations: the trial court should determine whether the settlement is within the reasonable range of the settlor's fair share; the trial judge should draw on personal experience since a fact question is presented on good faith; and the trial court should be guided by a public policy favoring settlement. *Arkwright Mutual Insurance Co. v. Garrett & West, Inc.* (N.D. Ill. 1991), 782 F. Supp. 376.

In this case, an experienced trial judge approved the settlement agreement and made a separate finding of good faith *only* after securing a report from the guardian *ad litem* for Babb, permitting Roesch to intervene, reviewing extensive briefing and conducting a hearing. The circuit court did not err in entering the finding of good faith. The order of the Champaign County circuit court is affirmed.

Affirmed.

STEIGMANN and LUND, JJ., concur.